```
                          UNITED STATES DISTRICT COURT
                            DISTRICT OF CONNECTICUT

------------------------------X
                              :
IAN T. COOKE                  :       Civil No. 3:21CV01244(SALM)
                              :
v.                            :
                              :
THOMAS KENNY, et al.          :       January 19, 2022
                              :
------------------------------X
```

## INITIAL REVIEW ORDER

Self-represented plaintiff Ian T. Cooke, a sentenced inmate in the custody of the Connecticut Department of Correction ("DOC"),[1] brings this action against defendants Thomas Kenny, Robert Major, and Bonnie Hakins.[2] See generally Doc. #8-1.

---

[1] The Court may take judicial notice of matters of public record. See, e.g., Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); United States v. Rivera, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); Ligon v. Doherty, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut DOC website, which reports that plaintiff was sentenced to a term of imprisonment on June 16, 2010, that has not expired. See http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=340812 (last visited Jan. 18, 2022).

[2] Neither Major nor Hakins is named as a defendant in the caption of the Amended Complaint, as required by Rule 10(a) of the Federal Rule of Civil Procedure. The Court, however, "excuse[s] technical pleading irregularities as long as they neither undermine the purpose of notice pleading nor prejudice the adverse party." Phillips v. Girdich, 408 F.3d 124, 128 (2d Cir. 2005). Major and Hakins were named in the original Complaint as defendants, and are described as such in the description of parties in the Amended Complaint. The Court concludes that plaintiff intended to name both individuals as defendants and finds that treating them as defendants would not undermine the

Plaintiff asserts four claims in the Amended Complaint: (1) retaliation for failure to become an informant, in violation of the First Amendment, against all defendants; (2) common law loss of consortium against all defendants; (3) retaliation for "use of the remedy system[,]" id. at 12, ¶55(b), in violation of the First Amendment, against defendant Kenny only; and (4) common law tortious interference against all defendants. See id. at 11-13.

I.  **STANDARD OF REVIEW**

Under section 1915A of Title 28 of the United States Code, the Court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §1915A(a). The Court then must "dismiss the complaint, or any portion of the complaint, if" it "is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b). Dismissal under this provision may be with or without prejudice. See Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004).

A civil complaint must include sufficient facts to afford defendants fair notice of the claims and the grounds upon which

---

purpose of notice pleading or prejudice them. Accordingly, the Clerk is directed to add Robert Major and Bonnie Hakins to the docket as defendants.

they are based and to demonstrate a plausible right to relief. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

It is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)). However, even self-represented parties must satisfy the basic rules of pleading, including the requirements of Rule 8. See, e.g., Wynder v. McMahon, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike."). A complaint, even one filed by a self-represented plaintiff, may be dismissed if it fails to comply with Rule 8's requirements "that a complaint must set forth a short and plain statement of the basis upon which the court's jurisdiction depends and of a claim showing that the pleader is entitled to relief." Prezzi v. Schelter, 469 F.2d 691, 692 (2d Cir. 1972).

## II. DISCUSSION

Plaintiff asserts First Amendment retaliation claims

arising out of two separate incidents, as well as state law claims for loss of consortium, and tortious interference with a contract. See Doc. #8-1 at 11-13. As relief, plaintiff seeks monetary damages from the defendants in their individual capacities, and injunctive relief from the defendants in their official capacities. See id. at 14.

### A.   Claims for Injunctive Relief

Plaintiff seeks three specific forms of injunctive relief:

> i. Enjoin the DOC from promoting staff who have a pattern, history, or habit of unlawful conduct to include, but not be limited to, violating inmate's civil rights.
>
> ii. Enjoin the defendants from retaliating against any inmate in the future, this may include demotion of the defendants such that they may no longer enjoy the supervisory ability to retaliate or promote retaliation by subordinate staff.
>
> iii. Order the DOC to implement an immediate oversight protocol to prevent abuse by SD personnel, to include, inter alia, formal guidance for solicitation of inmate informants and prohibition on retaliation for refusal to inform.

Id. at 14 (sic). As previously noted, the defendants are each alleged to be employees of Garner CI. See id. at 2, ¶¶5-7. Plaintiff is no longer confined at Garner. See id. at 11, ¶49. Accordingly, injunctive relief directed to the practices at Garner, or to these defendants as staff at Garner, would not impact plaintiff. Generally, "an inmate may not seek injunctive relief against prison officials after transfer." Booker v. Graham, 974 F.3d 101, 107-08 (2d Cir. 2020).

Furthermore, these requests seek injunctive relief on behalf of the inmate population as a whole, rather than relief addressed to plaintiff's individual situation. Plaintiff lacks standing to seek such relief. See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 358 (2d Cir. 2016) ("Another prudential [limit on standing is the] principle is that a plaintiff may ordinarily assert only his own legal rights, not those of third parties." (citing Warth v. Seldin, 422 U.S. 490, 499 (1975); Singleton v. Wulff, 428 U.S. 106, 113 (1976))).

The Court also notes that a plaintiff cannot demand that the Court order "demotion of the defendants[.]" See Lopez v. Semple, No. 3:18CV01907(KAD), 2019 WL 109339, at *5 (D. Conn. Jan. 4, 2019) ("This Court cannot order disciplinary action against the Defendants even should a violation by those Defendants be proven." (citing Osuch v. Gregory, 303 F. Supp. 2d 189, 194 (D. Conn. 2004))); see also Joyce v. Hanney, No. 3:05CV01477(WWE), 2009 WL 563633, at *9 (D. Conn. Mar. 4, 2009) ("Plaintiff does not have a constitutionally protected right to have any defendant disciplined or prosecuted." (citing S. v. D., 410 U.S. 614, 619 (1973))).

Finally, the relief sought is not obtainable from the individual defendants named in this case, who are not alleged to be responsible for general DOC policy. "[I]nasmuch as Plaintiff

~ 5 ~

seeks injunctive relief against a non-party, such relief is not available." Brown v. Chappius, No. 13CV00105(LGF), 2015 WL 5316356, at *2 (W.D.N.Y. Sept. 10, 2015).

For the foregoing reasons, plaintiff's requests for injunctive relief are **DISMISSED, without prejudice, pursuant to 28 U.S.C. §1915A(b)(1)**.

### B. Counts One and Three -- First Amendment Retaliation

The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official -- even those otherwise not rising to the level of a constitutional violation -- can be characterized as a constitutionally proscribed retaliatory act." Dolan v. Connolly, 794 F.3d 290, 295 (2d Cir. 2015) (citation and quotation marks omitted). Thus, the Circuit has "required that such claims be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." Id. (citations and quotation marks omitted).

To plead a viable First Amendment retaliation claim, an inmate must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against [him], and (3) that there was a causal connection between the protected speech and the adverse action." Brandon v. Kinter, 938 F.3d 21, 40 (2d Cir. 2019) (citation and quotation

~ 6 ~

marks omitted). Plaintiff brings two distinct retaliation claims in the Amended Complaint.

    1.    Count One

Plaintiff alleges that in September 2018, he was served with a subpoena "to be a witness in a civil rights action against Defendant Hakins[.]" Doc. #8-1 at 4, ¶18. "Subsequent to this subpoena the plaintiff voiced his concerns over being retaliated against for being a witness against DOC staff." Id. at ¶19. Plaintiff does not make any allegations regarding the retaliation he allegedly suffered as a result of serving as a witness.

"Circa January 2019 the plaintiff subpoenaed DOC phone recordings in aid of a pending civil case." Id. at 5, ¶21. The request was directed to defendant Major, who did not comply with the subpoena. See id.

On February 1, 2019, plaintiff was issued a disciplinary report and placed in restrictive housing ("RHU") on a charge of possession of sexually explicit material. See id. at ¶22. While he was in RHU, defendants Kenny and Major attempted to persuade plaintiff to become an informant, but he refused. See id. at 5-6, ¶23. Plaintiff alleges that thereafter, he was informed that defendants Kenny and Major had prohibited him from presenting evidence or having a hearing regarding the disciplinary report for possession of contraband. See id. at 6, ¶25. Plaintiff

alleges that throughout 2019, he was mistreated in various ways by all three defendants. He appears to contend that the alleged mistreatment was in retaliation for his actions in testifying against Hakins, refusing to serve as an informant for Kenny and Major, for seeking information through FOIA, and/or for filing complaints against these defendants.

At this stage, the Court will permit these claims to go forward against the defendants in their individual capacities. This is without prejudice to the filing of a motion for more definite statement and/or a motion to dismiss being filed by one or more defendants, if appropriate.

    2.    Count Three

In Count Three, plaintiff brings a First Amendment retaliation claim against defendant Kenny only. See id. at 12-13. "Circa May 2020 Defendant Kenny transferred back to Garner at the rank of Deputy Warden." Id. at 10, ¶46. At that time, plaintiff worked "as a third shift housekeeper." Id. at ¶44. Because of the COVID-19 pandemic, plaintiff was required "to clean high traffic areas, especially all touch/contact surfaces, throughout the facility[.]" Id. at ¶45.

Plaintiff alleges: "Due to the heightened risk of infection from COVID-19 during cleaning it was indicated that the third shift housekeeping inmates would receive so-called 'bio hazard' pay or its equivalent at a higher rate than the normal shift

pay." Id. at ¶47. Plaintiff does not indicate how "it was indicated" that such pay increases would be given, or by whom they were authorized. Plaintiff made "numerous informal inquiries[]" and submitted a "request to Defendant Kenny[,]" for this increased pay, but never received it. Id. at 11, ¶¶48, 51. "On or about October 19, 2020," plaintiff was transferred to Cheshire C.I. Id. at ¶40.

Plaintiff does not make any factual allegations in support of the claim that the failure to pay him "hazard pay" was retaliation by Kenny. Rather it appears that plaintiff simply assumes that because he had a negative experience at Garner after defendant Kenny returned to the facility, that experience must have been the result of his prior encounters with Kenny. Notably, the temporal proximity that was present as to some of the Count One adverse actions is lacking here. See, e.g., Washington v. Afify, 681 F. App'x 43, 46 (2d Cir. 2017) ("[T]emporal proximity between protected conduct and an adverse action constitutes circumstantial evidence of retaliation[.]"). Plaintiff and Kenny apparently had not been in contact for nearly a year while Kenny was not working at Garner. The changes to plaintiff's cleaning regimen were made prior to Kenny's return to Garner. See id. at 10, ¶¶45-46.

To the extent plaintiff contends that Kenny retaliated against him by having him transferred to Cheshire, again,

plaintiff presents no factual allegations that would support such a claim. The Amended Complaint does not allege that Kenny was aware of or involved with the order to transfer plaintiff to Cheshire.

Plaintiff has not adequately alleged the elements of a First Amendment retaliation claim in Count Three, against defendant Kenny, for actions taken in 2020. Plaintiff has not pointed to any protected speech or conduct that allegedly triggered the retaliation, and has shown no causal connection between any such protected speech or conduct and either the failure to receive "hazard pay" or the transfer to Cheshire. Absent such allegations, Count Three fails to state a claim. See Brandon, 938 F.3d at 40. Accordingly, Count Three is **DISMISSED, without prejudice, pursuant to 28 U.S.C. §1915A(b)(1).**

    **C.    Count Two -- State Law Loss of Consortium Claim**

Plaintiff alleges in a purely conclusory fashion that "as a direct/proximate result of the defendants' misconduct, jointly and severally, the plaintiff suffered and endured a loss of consortium with family and friends." Doc. #8-1 at 12, ¶54(b).

The common law of consortium claims has evolved over the years from one focused on a "loss of services" occasioned by the death or serious injury of a family member to include "a recognition of the intangible elements of domestic relations,

such as companionship and affection." Ashmore v. Hartford Hosp., 208 A.3d 256, 264 (Conn. 2019) (citation and quotation marks omitted).

Plaintiff offers no facts in support of his loss of consortium claim. He alleges no loss of services and no deprivation of any otherwise available companionship or affection. Significantly, he does not identify any specific family members as to whom he brings this claim. Connecticut currently recognizes two types of loss or consortium claims: loss of spousal consortium and loss of parental consortium (by a minor child). See Campos v. Coleman, 123 A.3d 854, 859 (Conn. 2015); Hopson v. St. Mary's Hosp., 408 A.2d 260, 265 (Conn. 1979).

Plaintiff has filed a motion seeking to stay this case pending the issuance of an opinion by the Connecticut Supreme Court on the question, certified to it by a Judge of this Court, of "whether Connecticut law recognizes a cause of action for loss of filial consortium." Hunte v. Abbott Labs., Inc., No. 3:20CV01626(SRU), 2021 WL 3679303, at *19 (D. Conn. Aug. 19, 2021). In Hunte, the Court is asked to consider the question of whether parents may bring a loss of consortium claim arising out of the wrongful death of their child. See id. Thus, if the Connecticut Supreme Court answers the certified question in the affirmative, the universe of relationships in which loss of

consortium claims are recognized would be expanded to add parents. Plaintiff has not alleged that he was deprived of the support or company of a spouse or child. Accordingly, no matter the outcome of the Hunte decision, the Amended Complaint fails to state a claim for loss of consortium under Connecticut law.

Accordingly, Count Two, alleging loss of consortium, is **DISMISSED, without prejudice, pursuant to 28 U.S.C. §1915A(b)(1).**

### D. Count Four -- Tortious Interference with Contract

Plaintiff alleges that "defendants intentionally interfered with" a "contractual relationship [that] existed between the plaintiff and the DOC/Office of the Attorney General." Doc. #8-1 at 13, ¶55. He does not make any factual allegations in support of this claim. The Connecticut Supreme Court recognizes

> a cause of action for tortious interference with contract rights. The essential elements of such a claim include the existence of a contractual or beneficial relationship and that the defendant, knowing of that relationship, intentionally sought to interfere with it; and, as a result, the plaintiff claimed to have suffered actual loss. For a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation or that the defendant acted maliciously. The burden is on the plaintiff to plead and prove at least some improper motive or improper means on the part of the defendant. The plaintiff in a tortious interference claim must demonstrate malice on the part of the defendant, not in the sense of ill will, but intentional interference without justification.

Landmark Inv. Grp., LLC v. Calco Const. & Dev. Co., 60 A.3d 983, 990 (Conn. App. 2013) (citations and quotation marks omitted). Tortious interference requires that a third party interfere with "the contractual relations of two other parties." Metcoff v. Lebovics, 2 A.3d 942, 948 (Conn. App. 2010) (citation and quotation marks omitted). Thus, "[t]here can be no intentional interference with contractual relations by someone who is directly or indirectly a party to the contract. The general rule is that the agent may not be charged with having interfered with a contract of the agent's principal." Id. (citation and quotation marks omitted).

The Court infers, although plaintiff does not articulate it, that the contract alleged is the "pre-existing settlement agreement[]" mentioned in the Amended Complaint. Doc. #8-1 at 11. Plaintiff makes no factual allegations regarding how any defendant interfered with this agreement, nor any factual allegations supporting the other elements of the claim. Accordingly, Count Four, alleging tortious interference with a contract, is **DISMISSED, without prejudice pursuant to 28 U.S.C. §1915A(b)(1).**

III. ORDERS

In accordance with the foregoing analysis, the Court enters the following orders:

**(1)** The Clerk is directed to add Robert Major and Bonnie

Hakins to the docket as defendants.

**(2)** This matter may proceed to service of process on Count One -- First Amendment Retaliation related to plaintiff's refusal to act as informant against defendants Kenny, Major, and Hakins, in their individual capacity for damages.

All other claims are **DISMISSED, without prejudice.**

**(3)** The Court grants plaintiff one opportunity to file a second amended complaint, correcting the deficiencies identified in this Order. No portion of the original Complaint (Doc. #1) or Amended Complaint (Doc. #8) will be incorporated into the Second Amended Complaint by reference, or considered by the Court. Plaintiff must identify <u>all</u> defendants against whom he asserts claims <u>in the caption</u> of any Second Amended Complaint. Any such Second Amended Complaint must be filed by **February 11, 2022.**

If plaintiff elects to file a Second Amended Complaint, the Court will then conduct an initial review of the Second Amended Complaint to determine whether it may proceed to service on any of the claims set forth therein. Plaintiff is cautioned that if the Second Amended Complaint fails to correct the deficiencies noted in this Order, he may not be permitted an additional opportunity for amendment.

**(4) Plaintiff is not required to file a Second Amended Complaint. He may elect to proceed on the First Amendment Retaliation claim in Count One, as described above, without**

**further delay.** If plaintiff elects not to file a Second Amended Complaint, he need only file a Notice on the docket indicating that he wishes to proceed to service on the claims that have survived this initial review. When the Court receives that Notice, the Clerk will immediately begin the process of attempting to serve defendants.

**(5)** The clerk shall send courtesy copies of the Amended Complaint (Doc. #8) and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

**(6) If plaintiff changes his address at any time during the litigation of this case, he MUST notify the Court.** Failure to do so may result in the dismissal of the case. Plaintiff must provide notice of a change of address even if he remains incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. He should also notify defense counsel of his new address.

A separate case management and scheduling order will enter when counsel appears for any defendant.

It is so ordered this 19th day of January, 2022, at New Haven, Connecticut.

                                    ____/s/_____
                                    HON. SARAH A. L. MERRIAM
                                    UNITED STATES DISTRICT JUDGE